# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **LORI PEDEN,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY** )<br>**ADMINISTRATION,** )<br>)<br>Defendant. ) | Civil Action Number<br>**2:12-cv-00081-AKK** |

## MEMORANDUM OPINION

Plaintiff Lori Peden ("Peden") brings this action pursuant to section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I.  Procedural History

Peden filed her application for Title II disability insurance benefits on July

17, 2009, alleging a disability onset date of March 3, 2009, due to back, foot, hip, and leg pain. (R. 157, 165). After the SSA denied her application on October 8, 2009, Peden requested a hearing on November 5, 2009. (R. 117-121, 122). At the time of the hearing on April 13, 2011, Peden was 51 years old with a GED, and her past relevant work included working as an assistant manager of a large discount retail store. (R. 93-114, 165, 163, 158). Peden has not engaged in substantial gainful activity since March 3, 2009. (R. 157).

The ALJ denied Peden's claims on August 25, 2011, which became the final decision of the Commissioner when the Appeals Council refused to grant review on November 8, 2011. (R. 9-17, 1-4). Peden then filed this action on January 9, 2012, pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Peden met the insured status requirements of the Act through December 31, 2013. (R. 11).  Moving to the first Step, the ALJ found that Peden had not engaged in substantial gainful activity since March 3, 2009, her alleged disability onset date,

and therefore met Step One. (R. 11). Next, the ALJ found that Peden met Step Two because she suffered from the severe impairments of "degenerative disc disease of the spine [and] myocardial infarction." *Id.* The ALJ then proceeded to the next step and found that Peden failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 12). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Peden

> can lift 20 pounds occasionally, 10 pounds frequently. . . can stand, sit, and walk 6 of 8 hours. . . must never climb ladders, ropes or scaffolds. . . can occasionally climb, balance, stoop, kneel, crouch, and crawl. . . must avoid concentrated exposure to extreme temperatures and hazards.

(R. 13). Moreover, in light of these findings, the ALJ determined that Peden is "capable of performing her past relevant work as an assistant manager." (R. 17). Consequently, the ALJ found that Peden "was not under a 'disability,' as defined in the Social Security Act, from March 3, 2009 through the date of [the ALJ's] decision." (R. 17).

## V. Analysis

Peden's sole contention of error is that the ALJ failed to properly assess her credibility regarding her pain complaints under the Eleventh Circuit Pain Standard

and the Social Security Regulations.² Doc. 10 at 6-7. Based on *Hale v. Brown*, 831 F.2d 1007, 1012 (11th Cir. 1987), Peden asserts that because the ALJ's reasons for refusing to credit her pain testimony are not supported by substantial evidence, this court must accept her pain testimony as true. The court disagrees.

As a threshold matter, the court notes that subjective complaints of pain alone are insufficient to prove disability. *See* 20 C.F.R. § 416.929(a); *see also Holt*, 921 F.2d at 1223. Rather, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id*. It is undisputed that Peden has a underlying medical condition and, in fact, the ALJ found as such in Step Two. (R. 11). The disagreement centers on whether Peden's conditions can be reasonably expected to cause the alleged pain Peden claims. Unfortunately for Peden, a review of the ALJ's opinion and the medical evidence shows that the ALJ properly considered the pain documented in connection with Peden's back

---

²The ALJ found that "[Peden's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (R. 14).

surgeries and properly concluded that Peden's complaints were not credible. As such, the ALJ's findings are supported by substantial evidence.

### A.   Peden's inconsistent statements

The ALJ found Peden's testimony inconsistent as it relates to the relief her July 10, 2008 and March 26, 2009 back surgeries provided. (R. 14, 256, 253). The evidence shows that Peden had initial relief from both surgeries, but that some pain resurfaced later after each surgery. (R. 247, 245, 244, 239, 238). Indeed, although Peden testified that the surgeries did not eliminate her back pain and that the pain is "constant" and always present, she added that "it's not as painful as it was before [she] had the surgery." (R. 101). The issue of contention is the ALJ's determination that Peden's testimony regarding her "constant pain" was not completely credible. (R. 15).

Unfortunately for Peden, the record supports the ALJ's determination regarding Peden's credibility. For example, the evidence shows that Dr. Cheng Tao gave Peden a left-side sacroiliac joint injection in May 2009 which provided Peden with significant relief, including Peden's own report that the injection eliminated her radiating leg pain. (R. 237). The ALJ noted also that the examinations performed by other physicians showed Peden had normal range of motion of the spine, nontender extremities, and no neurological deficits. *Id*.

Indeed, following the second surgery, on May 26, 2009 and July 23, 2009, Dr. Russell Ellis at the Decatur Orthopaedic Clinic reported injecting Peden with a steroid in her left sacroiliac joint, that Peden tolerated the procedure well, and that Peden described the injection as "very helpful." (R. 284-85). Further, the ALJ relied also on Dr. Vijay Jampala, who reported that his physical exam on September 28, 2009, *i.e.*, six months after the second surgery, showed "[Peden's] spine movements are normal, no pain," "both hips, both knees and ankle exam are normal," and her "[j]oint exam is normal," (R. 308), which contradicted Peden's report to him that the second "surgery [only] help[ed] some. . .but her numbness and other symptoms are still troubling her." (R. 307). Based on the medical evidence in the record and the inconsistencies in Peden's statements, the court finds that the substantial evidence supports the ALJ's determination that Peden's testimony was not credible.

    In addition to the medical evidence, the ALJ found also that Peden's statements regarding her ability to undertake daily activities in her August 23, 2009 Disability Function Report were inconsistent with her testimony. (R. 14). Peden reported in the Function Report that she washed dishes, mowed grass, swept, and played the guitar and piano occasionally. (R. 178, 180). However, Peden denied engaging in any of these activities during her testimony at the

hearing. (R. 107-08, 110). Consequently, the ALJ determined that the inconsistency detracted from Peden's credibility. (R. 14).

Peden challenges the ALJ's finding by contending that the "ALJ's reasoning ignores the high likelihood that [Peden's] condition actually worsened over time." Doc. 10 at 9. Unfortunately for Peden, the medical evidence actually shows that her condition has improved. (R. 101, 237, 284-85, 307-08). Next, Peden contends that she provided a credible explanation for the difference in her testimony, doc. 10 at 8-9, *i.e.*, that "[a]t the very beginning I tried to do those things, but it hurts me so bad that my husband and one of my sons has had to pick up and do that. I tried at first because I didn't want to admit I couldn't do it," (R. 110). While Peden's explanation is plausible, it is also equally plausible that her inconsistencies are exaggerations. Peden points to no specific evidence in the record to support her contention that she can no longer perform the activities in question. Rather, Peden argues only that the ALJ should have accepted her explanation as reasonable. Doc. 10 at 9. Unfortunately, even if the undersigned finds Peden's explanation plausible, this court simply cannot say that the ALJ erred in finding otherwise. After all, as the individual who observed Peden directly at the hearing, the ALJ was in a far better position than this court to assess Peden's credibility. Moreover, a district court may not reconsider the facts,

reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See Martin*, 894 F.2d at 1529. In short, based on this record, the ALJ's assessment that Peden's testimony with regard to her daily activities was not credible is supported by substantial evidence.

### B. <u>Unemployment benefits application evidence</u>

The ALJ found also that Peden's application in 2010 for unemployment benefits detracted from Peden's credibility. (R. 14). The ALJ noted that "a person who applies for unemployment benefits generally holds himself or herself out as willing and able to work" and that Peden's application for unemployment benefits undermined her credibility about the severity of her pain. (R. 15). Again, Peden contends that she provided a credible explanation for her conduct, *i.e.*, that she applied for unemployment benefits because she "didn't know what to do, basically" after she was initially denied Social Security benefits. (R. 100). This assertion, however, does not rebut the ALJ's finding. Likewise, Peden's assertion that she applied for benefits because she "was going to try to get a different kind of job maybe, but [she] couldn't," unfortunately, supports the ALJ's finding that Peden's actions discredit her testimony about her disabling pain. In short, the ALJ's determination that Peden's unemployment application detracted from her credibility is supported by substantial evidence.

### C. Gaps in Peden's treatment

Finally, the ALJ found that gaps in Peden's treatment from 2009 until 2011 undermined Peden's testimony about the alleged severity of her pain. (R. 15). Peden last saw a doctor for treatments for her back pain in June or July of 2009. (R. 104). Although she visited the Morgan County Community Free Clinic from April 2010 to May 2011, and complained of pain, the clinic did not provide pain treatment. (R. 105, 374-386, 381). As to why she sought no pain treatment after June or July of 2009, Peden cites her lack of health insurance as the reason. (R. 106); doc. 10 at 10. The court agrees with Peden that a claimant who cannot seek treatment on a consistent basis due to lack of medical insurance rebuts a determination that the failure to seek treatment undermines the claimant's pain contention. However, ultimately, Peden has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Peden failed to show how the evidence in the record during this "gap" supported her disability determination. Consequently, the court finds that the ALJ's error is harmless, and that regardless of this incorrect determination, the other reasons the ALJ provided for finding Peden's testimony not credible are supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Peden is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 31st day of October, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE